## LEON v. TORRUELLA.

### No. 3341.

Circuit Court of Appeals, First Circuit.
Nov. 12, 1938.

J. A. Poventud and A. S. Poventud by José A. Poventud, both of Ponce, P. R., for appellant.

Raul Matos, of Ponce, P. R. (Fernando B. Fornaris, of Ponce, P. R., on the brief), for appellee.

Before BINGHAM and WILSON, Circuit Judges, and BREWSTER, District Judge.

BINGHAM, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Puerto Rico affirming a judgment of the District Court of Ponce in an action for divorce in which an amended complaint was filed January 23, 1936. In this complaint, on which trial was had, the plaintiff averred that he and the defendant were residents of Ponce, Puerto Rico, and had always resided in the Island; that they were married at Ponce on June 1, 1898, which marriage had not been dissolved or annulled; that no children had been born of the marriage; and that, since the month of March, 1926, there had existed and exists a complete and absolute separation of said spouses without interruption of any kind.

In her answer the defendant admitted the facts set forth in the complaint and, as new matter in defense, averred that the complaint did not state facts sufficient to constitute a cause of action, (1) because, according to it, the alleged separation began in March, 1926, and the seven year period of time had elapsed prior to the approval of Act No. 46 on May 9, 1933, whereon the present action was based; (2) because no retroactive effect could be ascribed to Act No. 46, as it contained no declaration whatever about its retroactivity; (3) because Act No. 46 expressly provided that it should become effective ninety days after its approval, and thereby the Legislature gave it a prospective effect; (4) because if Act No. 46 were retroactively applied it would be unconstitutional and in violation of Section 34, subdivision 6, of the Organic Act of Puerto Rico of March 2, 1917, 48 U.S.C.A. § 827; and (5) because it would likewise be unconstitutional and in violation of Section 2, subdivision 8, of the Organic Act of March 2, 1917, 48 U.S.C.A. § 737, par. 8, and of Article 1, Section 9, clause 3 of the United States Constitution, U.S.C.A.Const. art. 1, § 9, as an ex post facto law.

The only evidence offered at the trial was that of the plaintiff, and the court having found that the allegations of the complaint were true; that the parties had been married for nearly forty years; and that there had been a complete and uninterrupted separation of both spouses for more than seven years prior to the filing of the complaint in conformity with Section 164 of the Civil Code of Puerto Rico (1911 Ed. p. 610), as amended by Act No. 46 of May 9, 1933, rendered judgment granting the divorce, considering the defendant as the innocent spouse, with all the rights inherent in such condition, and granted the divorce in accordance with the law invoked by the plaintiff.

Act No. 46 was approved May 9, 1933, and in Section 3 provided that it should take effect ninety days after its approval. It amended Section 164 of the Civil Code (1911) by adding a ninth cause of divorce to those theretofore provided, as follows:

"9. The separation of both spouses for an uninterrupted period of time of more than seven (7) years; Provided, that when the separation for the said period of more than seven (7) years is satisfactorily proved, the woman, when the judgment is rendered, shall always be considered as the innocent spouse, with all the rights inherent in such condition following divorce."

Section 34, paragraph 6 of the Organic Act of Puerto Rico of March 2, 1917, 48 U.S.C.A. § 827, par. 6, provides:

"No act of the legislature except the general appropriation bills for the expenses of the government shall take effect until ninety days after its passage, unless in case of emergency (which shall be expressed in the preamble or body of the act) the legislature shall by a vote of two-thirds of all members elected to each house otherwise direct. * * *"

Section 2, subdivision 8, of the Organic Act of Puerto Rico of March 2, 1917, 48 U.S.C.A. § 737, par. 8, provides:

"[That] no ex post facto law * * * shall be enacted."

And Article 1, Section 9, clause 3 of the Constitution, U.S.C.A.Const. art. 1, § 9, cl. 3, contains a like provision, but it relates to the power of Congress.

We are met at the outset with the question of our jurisdiction to entertain this appeal. Section 128 of the Judicial Code, as amended by the Judiciary Act of 1925, Section 1, 28 U.S.C.A. § 225, provides:

"Section 128(a) [Section 225]. The circuit courts of appeal shall have appellate jurisdiction to review by appeal or writ of error final decisions— * * *

"Fourth. In the Supreme Courts * * * of Puerto Rico, in all civil cases, · civil or criminal, wherein the Constitution or a statute or treaty of the United States or any authority exercised thereunder is involved; in all other civil cases wherein the value in controversy, exclusive of interest and costs, exceeds $5,000, and in all habeas corpus proceedings."

It is not claimed in this case, and there is no ground for claiming, that a sum, exclusive of interest and costs, exceeding $5,000 is in controversy. It is urged, however, that this is a case wherein a substantial federal question is involved and therefore this court has jurisdiction to entertain the cause.

We have set forth the above provisions of the Organic Act and of the Constitution of the United States, with which Act No. 46, approved May 9, 1933, is alleged to be in conflict. It is contended that Act No. 46 is in conflict with Section 34, paragraph 6, of the Organic Act, 48 U.S.C.A. § 827, par. 6, providing that "no act of the legislature except general appropriation bills for the expenses of the government shall take effect until ninety days after its passage, unless in case of emergency (which shall be expressed in the preamble or body of the act) the legislature shall by a vote of two-thirds of all members elected to each house otherwise direct."

We fail to see wherein Act No. 46 in its enactment fails in any respect to comply with the provisions of Section 34, paragraph 6, of the Organic Act. It was approved May 9, 1933, and expressly provided that it should not take effect until "ninety days after its approval," and fully complied with Section 34, paragraph 6. This provision of the Organic Act has only to do with the enactment of a law, not its application. This does not present a substantial federal question.

Our jurisdiction is also sought to be invoked on the theory that Act No. 46, as applied to this case, is an ex post facto law, and violates Section 2, subdivision 8, of the Organic Act, and probably Article 1, Section 10, clause 1, U.S.C.A.Const. art. 1, § 10, cl. 1 (not Article 1, Section 9, clause 3, U.S.C.A.Const. art. 1, § 9, cl. 3) of the Constitution of the United States providing that no ex post facto law shall be enacted, claim-

854

ing that the complaint shows that the term of separation between the spouses occurred prior to the time Act No. 46 became a law. This contention overlooks the legal requirement that the continuous and uninterrupted separation should be a completed act or fact on the filing of the complaint and the finding of the court that the separation of the spouses was absolute and uninterrupted for more than seven years when the complaint was filed. The amended complaint was filed January 23, 1936, or about two years and a half after Act No. 46 was approved and became a law on August 9, 1933, and the seven year period of separation on which the divorce was granted was the seven year period that existed and had become complete on the date of the filing of the complaint. In other words, the complaint in this case was for a continuing cause which existed and was a completed act or fact on the day the complaint was filed.

Had it been found that a continued uninterrupted separation for the required time did not exist on the filing of the complaint, the divorce could not properly have been granted. It was the completed act on that day that gave the decree validity. As that act or fact came into existence some two years and a half after the statute in question became a law on August 9, 1933, the statute was not retroactively applied as to that, even though a portion of the time that made up the completed act occurred prior to August 9, 1933.

But if it be assumed that Act No. 46 is thus given a retroactive effect, it would not be in contravention of the Organic Act and provisions of the Constitution of the United States to the effect that no ex post facto law shall be enacted.

'The Supreme Court has uniformly held that an ex post facto law is a statute of a criminal nature which punishes acts that took place prior to its enactment. Kring v. Missouri, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506. There the court, in considering the term "ex post facto" as used in the Constitution of the United States, said:

"This term necessarily implies a fact or act done, after which the law in question is passed. Whether it is ex post facto or not relates, in criminal cases, to which alone the phrase applies, to the time at which the offense charged was committed. If the law complained of was passed before the commission of the act with which the prisoner is charged, it cannot, as to that offense, be

an ex post facto law. If passed after the commission of the offense, it is as to that ex post facto, though whether of the class forbidden by the constitution may depend on other matters. But, so far as this depends on the time of its enactment, it has reference solely to the date at which the offense was committed to which the new law is sought to be applied. No other time or transaction but this has been in any adjudged case held to govern its ex post facto character." Pages 225, 226, 2 S.Ct. page 447.

Thereafter, in considering the meaning of this term the opinion points out that the framers of the Constitution, before the completion of the instrument, ascertained that the phrase, in the English law "had acquired a signification limited to the criminal law, and the words 'or law impairing the obligation of contracts' were added to give security to rights resting in contracts." And at the bottom of page 227, 2 S.Ct. page 449, it is said:

"The first case in which this court was called upon to construe this provision of the constitution was that of Calder v. Bull, 3 Dall. 386 [1 L.Ed. 648], decided in 1798. The opinion was delivered by Chase, J., and its main purpose was to decide that [the provision] had no application to acts concerning civil rights. The opinion, however, is important, as it discusses very fully the meaning of the provision in its application to criminal cases. It defines four distinct classes of laws embraced by the clause: '(1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action; (2) every law that aggravates the crime or makes it greater than it was when committed; (3) every law that changes the punishment and inflicts a greater punishment than was annexed to the crime when committed; (4) Every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offense in order to convict the offender.' Again he says: 'But I do not consider any law ex post facto, within the prohibition, that modifies the rigor of the law, but only these that create or aggravate the crime or increase the punishment or change the rules of evidence for the purpose of conviction.' "

In Calder v. Bull, 3 Dall. 386, at page 390, 1 L.Ed. 648, Mr. Justice Chase further said:

855

"The prohibition, in the letter, is not to pass any law concerning, and after the fact; but the plain and obvious meaning and intention of the prohibition is this: that the legislatures of the several states, shall not pass laws, after a fact done by a subject or citizen, which shall have relation to such fact, and shall punish him for having done it. The prohibition, considered in this light, is an additional bulwark in favor of the personal security of the subject, to protect his person from punishment by legislative acts, having a retrospective operation."

The cases of Cummings v. State of Missouri, 4 Wall. 277, 18 L.Ed. 356, and Ex parte Garland, 4 Wall. 333, 18 L.Ed. 366, further point out that a law, in order to offend against the ex post facto clause of the Constitution, must not only act retroactively, but punish the person that did the act upon which it so operates, and that, whether it so punishes does not depend upon the form in which the law is drawn, but upon its substance and effect. In the first case the court held that a provision in the Constitution of the State of Missouri which punished a minister of the gospel by excluding him from the exercise of his clerical function, and (in the second case) an Act of Congress, which punished a lawyer by excluding him from practicing his profession in the federal courts, unless each would take an oath that they had not engaged in or encouraged armed hostilities against the government of the United States, were ex post facto laws, because they punished, in a manner not before punishable by law, offences committed before their passage and because they initiated a new rule of evidence in aid of conviction and were to be classified as criminal laws.

■ Section 164 of the Civil Code (1911 Ed.), either before or after its amendment in 1933 by the insertion of the ninth ground of divorce, was not in form or substance a criminal law imposing punishment and in violation of the provisions of the Organic Act or the Constitution of the United States prohibiting the enactment of an ex post facto law; for, if applied retroactively to past acts, it imposed no punishment and fell within none of the classes of laws embraced by the ex post facto provision.

■ We conclude, therefore, that the case presents no substantial federal question in view of the long standing and well recognized decisions of the Supreme Court defining what constitutes an ex post facto law, and the application of that provision to laws dissolving the marriage relation; that it has been recognized from time out of memory that it is within the power of the legislature of a state to enact laws defining who, when, and under what circumstances its citizens and subjects may marry and the causes of divorce upon which the marriage status may be dissolved whenever the public good or justice to either or both of the parties would thereby be preserved. Maynard v. Hill, 125 U.S. 190, at pages 205 and 211, 8 S.Ct. 723, 31 L.Ed. 654; Dartmouth College v. Woodward, 4 Wheat. 518, 587, 598, 628, 4 L.Ed. 629; Bishop on Marriage and Divorce, Vol. 1, Sec. 1480; Hava v. Chavigny, 143 La. 365, 78 So. 594. In Maynard v. Hill, supra, it was even held that a special act of the Legislature of the Territory of Oregon granting a divorce to the husband there residing, for no named cause and where none existed, did not infringe any provision of the Constitution of the United States, that "its will was a sufficient reason for its action." Page 209, 8 S.Ct. page 728.

■ The case presents no substantial federal question.

The appeal is dismissed for want of jurisdiction.